**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID A. VARNES, BETTY SPENCER,
JOSEPH WILLIAMS, and JASON NIMEY,
individually, and on behalf of all
others similarly situated,

        **CASE NO.  3:12-cv-622-J-99TJC-JBT**

        Plaintiffs,

v.                    **CLASS REPRESENTATION**

THE HOME DEPOT USA, INC. and
THD AT-HOME SERVICES, INC. d/b/a
THE HOME DEPOT AT-HOME SERVICES

        Defendants.

_____/

**<u>SECOND AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR TRIAL BY JURY</u>**

Plaintiffs, DAVID VARNES, BETTY SPENCER, JOSEPH WILLIAMS, and JASON

NIMEY, individually and on behalf of all others similarly situated, through their attorneys, bring

this Second Amended Class Action Complaint against Defendants, THE HOME DEPOT USA,

INC. and THD AT-HOME SERVICES, INC. d/b/a THE HOME DEPOT AT-HOME

SERVICES (collectively "The Home Depot" or "Defendants").

**<u>INTRODUCTION</u>**

1.      The Home Depot touts itself as the "nation's #1 home improvement retailer," with

more than 2,200 retail stores worldwide, including approximately 153 stores throughout Florida.

2.      As a home improvement specialty retailer, The Home Depot sells a variety of

products to the general public, including windows and sliding-glass doors.  In conjunction with

the sale of these products to consumers, The Home Depot markets, promotes, advertises, offers

and sells installation services for these products to consumers.

3.      The Home Depot entices consumers into purchasing installation services by promoting itself as providing "peace of mind" throughout the entire installation process, "from start to finish," with assurances that the installation of windows and sliding-glass doors will be "done right," in a professional and workmanlike manner.

4.      Through these representations, The Home Depot necessarily warrants that its products, such as windows and sliding-glass doors, will be installed in compliance with any and all applicable laws and regulations, as well as manufacturer instructions.  Contrary to these representations, however, The Home Depot consistently and uniformly fails to install windows and sliding-glass doors in compliance with applicable construction standards, the Florida Building Code, and explicit manufacturer instructions, thereby causing damages to Plaintiffs and Class Members.

5.      The Home Depot has engaged in this unscrupulous behavior in order to cut costs and offer lower prices to consumers than its competitors, allowing The Home Depot to increase its profits at the expense of consumers who receive substandard installation services that violate applicable laws and regulations and prevent their windows and sliding-glass doors from functioning as intended.

6.      In Florida, where homes are frequently subjected to heavy rain and high-winds, it is imperative that the installation of windows and sliding-glass doors is "done right" in order to meet applicable construction standards and the Florida Building Code, which was specifically enacted to protect Florida residents and their homes from Florida's turbulent weather.  It is also imperative that windows and sliding-glass doors are installed in accordance with the manufacturers' explicit instructions so the products are able to function as intended, and are eligible for the manufacturers' warranty.  Defendants' unconscionable failure to properly install

windows and sliding-glass doors has jeopardized the safety of consumers, and has also subjected their property to significant structural damage.

7.     The Home Depot has earned substantial profits from product sales and accompanying installation services in Florida.  From January 1, 2008 to date, The Home Depot has installed at least 114,959 windows and sliding-glass doors in connection with at least 18,183 jobs in Florida, for a total revenue of at least $106,945,201.

8.     Plaintiffs bring this action on behalf of themselves and a Class consisting of all Florida property owners who purchased windows and sliding-glass doors, and accompanying installation services, from The Home Depot.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000 and is a class action in which Members of the Class are citizens of a state different from Defendants.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because Defendants:

    a.     are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products and services in this District;

    b.     do substantial business in this District; and

    c.     are subject to personal jurisdiction in this District.

## PARTIES

11.     Plaintiff, David Varnes, is an individual who resides in Manassas, Virginia, who purchased windows, a sliding-glass door, and installation services for same, from The Home Depot retail store in Palm Coast, Florida, to be installed at his home in Flagler Beach, Florida. According to The Home Improvement Contract (hereinafter, "the Contract") signed by Mr. Varnes and Defendants, discussed in greater detail below, the windows and door that Mr. Varnes purchased were "Sold, Furnished and Installed" by THD At-Home Services, Inc. d/b/a The Home Depot At-Home Services, located at 207 Kelsey Lane, Suite K, Tampa, Florida 33619.

12.     Plaintiff, Betty Spencer, is an individual who resides and owns a home in Casselberry, Florida.  Ms. Spencer purchased windows, a sliding-glass door, and accompanying installation services for same, from The Home Depot retail store in Casselberry, Florida, to be installed in her home.   According to the Contract signed by Ms. Spencer and Defendants, discussed in greater detail below, the windows and door that Ms. Spencer purchased were "Sold, Furnished and Installed" by THD At-Home Services, Inc. d/b/a The Home Depot At-Home Services, located at 207 Kelsey Lane, Suite K, Tampa, Florida 33619.

13.     Plaintiff, Joseph Williams, is an individual who resides and owns a home in Casselberry, Florida.  Mr. Williams purchased windows and installation services for same from The Home Depot retail store in Oviedo Florida, to be installed in his home.  According to the Contract signed by Mr. Williams and Defendants, discussed in greater detail below, the windows that Mr. Williams purchased were "Sold, Furnished and Installed" by THD At-Home Services, Inc. d/b/a The Home Depot At-Home Services, located at 207 Kelsey Lane, Suite K, Tampa, Florida 33619.

14.     Plaintiff, Jason Nimey, is an individual who resides and owns a home in Orlando, Florida.   Mr. Nimey purchased windows and installation services for same from The Home Depot retail store in Orlando Florida, to be installed in his home.   According to the Contract signed by Mr. Nimey and Defendants, discussed in greater detail below, the windows and door that Mr. Nimey purchased were "Sold, Furnished and Installed" by THD At-Home Services, Inc. d/b/a The Home Depot At-Home Services, located at 207 Kelsey Lane, Suite K, Tampa, Florida 33619.

15.     Defendant, The Home Depot USA, Inc. is incorporated in Delaware with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339.   The Home Depot has more than 2,200 retail stores worldwide, including approximately 153 stores throughout the state of Florida.

16.     Defendant, THD At-Home Services d/b/a The Home Depot At-Home Services is incorporated in Georgia with its principal place of business at 2455 Paces Ferry Road, C-20, Atlanta, Georgia 30339.   The Home Depot At-Home Services d/b/a The Home Depot At-Home Services provides a number of services including, but not limited to, the installation of windows and doors, throughout the state of Florida.

## SUMMARY OF FACTS COMMON TO ALL CLAIMS

### Defendants' Deceptive And Misleading Marketing Campaign

17.     The Home Depot offers installation services for windows and sliding-glass doors purchased at its retail stores in Florida.   The typical sales process consists of the consumer visiting a retail store, viewing the windows or sliding-glass doors and scheduling an in-home consultation with a sales representative from The Home Depot's in-home sales program to discuss the products and installation services.

18.    The Home Depot lures consumers into purchasing installation services, from which it generates significant revenue, by promoting itself as providing quality installation services, with project management "from start to finish" and assurances of a "complete and proper installation."    As part of this promotion, The Home Depot makes the following representations to consumers:

a.    "Total 'end-to-end' project management from measurement to installation to cleanup;" *See attached* Exhibit A.

b.    "Sit Back & Watch Us Work...Our team will provide start to finish project management from all phases of your windows installation, from delivery to cleanup;" *See attached* Exhibit A.

c.    "The Home Depot will ensure that your windows are installed professionally to give you peace of mind for years to come;" *See attached* Exhibit A.

d.    "Labor and product backed by The Home Depot, the nation's #1 home improvement retailer;" *See attached* Exhibit A.

e.    "When you hire us for your project, you'll know we will get the job done right," *See attached* Exhibit B; and

f.    "When you work with The Home Depot, you won't have to go to the trouble of finding multiple installers and home service professionals for different parts of your project.  From your initial consultation all the way through the installation and cleanup, we'll make sure the project is done right;" *See attached* Exhibit B.

g.    "INSTALLATION YOU CAN TRUST.  We know you have a choice when it comes to home improvement projects.  That's why at The Home Depot, we are

committed to providing quality installation services by offering a complete solution - from start to finish." *See attached* Exhibit C.

h. "PROFESSIONAL INSTALLATION.  Expect licensed and insured professionals who will make sure you receive a complete and proper installation." *See attached* Exhibit C.

i. "The Best Warranties, backed by the largest home improvement retailer in the World!" *See attached* Exhibit D.

19.     These uniform representations and assurances are intended to – and did successfully - lure consumers into purchasing products and installation services from The Home Depot.

20.     Notwithstanding these representations, The Home Depot systemically and uniformly installs windows and sliding-glass doors in violation of applicable construction standards and the Florida Building Code, and contrary to explicit manufacturer instructions, which are written in compliance with the Florida Building Code and which must be followed in order to receive the benefits of the manufacturers' product warranty.  Defendants' actions – or inactions – are unconscionable and have jeopardized the safety and security of consumers and their homes.

**Defendants' Deceptive Installation Service Business**

21.     Defendants have failed in their obligation to perform installations in compliance with applicable laws and regulations, and manufacturers' instructions, which has subjected Plaintiffs and Class Members to damages to their real and personal property.

22.     The Home Depot has unequivocally failed to comply with one or more of the following mandatory requirements of the Florida Building Code, thereby allowing air and water infiltration, among other consequences:

a.      Existing bucks are not removed and replaced when they do not support the entire span of the window, or the wood buck is in a condition that will not allow for proper transfer of the load, in violation of Chapter 16 of the Florida Building Code - Existing Building or Chapter 17 of the Florida Building Code – Building;

b.      New bucks are not installed to meet the anchorage requirements of Chapter 16 of the Florida Building Code - Existing Building Code or Chapter 17 of the Florida Building Code – Building; and

c.      Windows are not fit to meet the fastener spacing requirements for bucks included in Chapter 16 of the Florida Building Code, Existing Building Code.

23.     These failures are also a violation of explicit manufacturer installation instructions, which are written in compliance with the Florida Building Code, and which must be followed in order for the products to function as intended and for consumers to receive the benefits of the manufacturers' product warranty.

24.     The Home Depot engages authorized service providers to perform these installations, and acts as a general contractor on all of these installations.  Indeed, in its 2011 and 2012 10K filings, The Home Depot acknowledges that it acts as the general contractor for the installation of windows and sliding-glass doors, including that it may be subject to lost sales, fines, and lawsuits if it fails to effectively manage the installation service business:

*If we are unable to manage effectively our installation service business, we could be subject to fines and lawsuits.*

8

> *We act as a general contractor to provide installation services to our D-I-F-M customers through third-party installers.* As such, we are subject to regulatory requirements and risks applicable to general contractors, which include management of licensing, permitting and quality of our third-party installers. We have established processes and procedures that provide protections beyond those required by law to manage these requirements and ensure customer satisfaction with the services provided by our third-party installers. If we fail to manage these processes effectively or provide proper oversight of these services, we could suffer lost sales, fines and lawsuits, as well as damage to our reputation, which could adversely affect our business. *See* attached Exhibit E.

25.     The Home Depot exercises direction and control over these "third-party installers," including a requirement that these installers wear clothing with The Home Depot logo during installation.  The Home Depot also instructs these installers on how to install windows and sliding-glass doors, including the materials the installers should use - or omit - during the installation process and whether they should comply with the Florida Building Code and manufacturer instructions.

26.     Further, when permits are required for the installation of windows and sliding-glass doors, The Home Depot pulls the permits and is listed on the permits as both the contractor and subcontractor.  The authorized service provider is not listed on the permit.

27.     As part of the permitting process, certain counties require Defendants to obtain an accompanying inspection in order to close out the permit when the project is complete.  In certain counties, these permits require an inspection only after the installation is complete and inspectors are unable to assess the hidden code and construction violations alleged herein, known as a "closed inspection."  In counties with "closed inspections," The Home Depot instructs its authorized service providers to install windows and sliding-glass doors in violation of the Florida Building Code, applicable construction standards and explicit manufacturer instructions.  Indeed, the installers for Mr. Varnes' and Ms. Spencer's installations each testified that The Home Depot specifically instructed them to exclude new bucks from installations in counties with closed

inspections. This is both a violation of the Florida Building Code and the manufacturers' explicit instructions, which may void the manufacturers' warranty.

28.     Furthermore, independent inspections of the Plaintiffs' windows and sliding-glass doors confirmed that the installations did not comport with the Florida Building Code or manufacturers' instructions, including the failure to use adequate bucks and anchorage systems. Such violations could result in significant damage to the windows and doors, and surrounding structures, in Plaintiffs' homes.

29.     These installations were performed by at least three different authorized service providers, all of whom have one thing in common – they each work under the direction and control of The Home Depot. As mentioned above, the installers for Mr. Varnes' and Ms. Spencer's windows, both of whom receive and follow The Home Depot's installation instructions, each testified that The Home Depot directed them to install windows and sliding-glass doors in violation of the Florida Building Code and manufacturer instructions.

30.     In addition to violating the Florida Building Code and potentially voiding the manufacturer warranty, these abuses are also a breach of the Contract that consumers, including Plaintiffs and the Class, enter into with Defendants.

31.     As part of Plaintiffs and Class Members' purchase of windows and sliding-glass doors, and installation services for same, Plaintiffs and Class Members enter into a Contract with Defendants. A copy of said agreements between Defendants and Plaintiffs are attached hereto as composite Exhibit "F" and incorporated herein for all purposes. Based upon information and belief, these Contracts are the same or similar to all Contracts entered into by and between Plaintiffs and Class Members and Defendants.

32.     Pursuant to the terms of the Contract, Defendants are obligated to arrange for an authorized service provider to perform the installation services in a professional and workmanlike manner, in accordance with applicable construction standards, the Florida Building Code and explicit manufacturer instructions.  Included in Plaintiffs' and Class Members' purchase of the windows and sliding-glass doors, and installation services for same, is Defendants guarantee to Plaintiffs and Class Members certain express warranties, as enumerated in the Contract, which warrant any defects due to faulty workmanship of the installation. Defendants have breached these obligations by failing to ensure these installations are performed in compliance with the Florida Building Code and manufacturer instructions, and by specifically instructing authorized service providers to engage in these violations.

33.     In addition to the warranties enumerated in the Contract, The Home Depot offers a Limited Lifetime Product Warranty, which is provided to Plaintiffs and Class Members contemporaneously with the Contract, and includes a "Lifetime Craftsmanship Warranty" that ensures the installation is done right as long as the consumer owns his or her home.  As part of this warranty, attached hereto as Exhibit "G," The Home Depot warrants the following to consumers:

a.      "TOTAL   PROJECT   MANAGEMENT   On   time,   courteous,   respectful professionals dedicated to managing your project from beginning to end;"

b.      "GUARANTEED All installations are guaranteed ++ The Home Depot will stand behind the service you receive;" and

c.      "PROFESSIONAL INSTALLATION YOU CAN TRUST.  We know you have a choice when it comes to home improvement projects.  That's why at The Home Depot, we are committed to providing quality products an installation services by

offering a complete solution - from start to finish.  It's our promise.  Now, that's peace of mind."

34.     Based upon reasonable belief, this express warranty is the same or similar to all express warranties provided by Defendants to Plaintiffs and Class Members.

35.     Despite representations that The Home Depot stands behind its installation services and ensures all windows and sliding-glass doors are installed in compliance with applicable laws and regulations, Defendants knowingly install windows in violation of applicable construction standards and the Florida Building Code, and contrary to explicit manufacturer instructions, which are written in compliance with the Florida Building Code and which must be followed in order for consumers to receive the benefits of the manufacturers' product warranty.

36.     Thus, contrary to Defendants' representations to consumers that they can have "peace of mind" during the installation process, "from start-to-finish," and that consumers will receive a "complete and proper installation," Defendants have installed the subject windows and sliding-glass doors in violation of applicable construction standards and the Florida Building Code, and contrary to explicit manufacturer instructions.

37.     As a result of these violations, Plaintiffs and Class Members have suffered damage to their real and personal property and have paid for products and services that have not delivered and performed as promised.

### PLAINTIFF DAVID VARNES' INDIVIDUAL ALLEGATIONS

38.     Plaintiff, David Varnes, met with a sales consultant for The Home Depot at a retail store in Palm Coast Florida, in June 2011, to discuss the purchase and installation of four windows and one sliding-glass door for his condominium in Flagler County, Florida.  After

visiting The Home Depot retail store, a representative of The Home Depot visited Mr. Varnes' home for a pre-installation inspection.

39.     Following assurances from The Home Depot that the installation would be performed properly, in compliance with all applicable laws and regulations, and manufacturer instructions, Mr. Varnes signed the Contract for the installation of several Simonton windows, one PGT window and a Simonton sliding-glass door.   The Home Depot's above-described marketing campaign, including representations that he would receive a complete and proper installation "from start to finish," formed a significant basis for Mr. Varnes' decision to purchase these products and services from Defendants.

40.     The building permit for Mr. Varnes' installation, which was pulled by a Home Depot employee, lists The Home Depot At Home Services as the contractor and subcontractor. It does not list The Home depot authorized service provider who installed the windows in Mr. Varnes' home.  The permit indicates that a final building inspection, meaning a closed inspection, was required.

41.     The saga surrounding the defective installation of Mr. Varnes' windows and sliding-glass door began with the faulty installation of these products in August and September 2011.  Following the defective installation, Mr. Varnes experienced multiple substantial leaks around the windows and sliding-glass door, which caused damage from water saturation and mold to his wallboard and insulation just below the window and to his carpet and nightstand. Mr. Varnes personally repaired the damage from the water leaks, which included removal and replacement of his carpet and nightstand, and additional out-of-pocket expenses relating to the hauling and disposal of his damaged property.

42.     Upon inspection of the windows and sliding-glass door, Mr. Varnes found unused screw holes in the window sills and several screws installed in front of the unused holes that were not attached to anything and were also not sealed below or above the sill.  This improper installation allowed large amounts of water to leak into the walls and rooms of Mr. Varnes' home.  Upon making this discovery, Mr. Varnes immediately contacted Defendants and also spoke with the installer, who informed Mr. Varnes that his windows and sliding-glass were installed in violation of the Florida Building Code and contrary to explicit manufacturer instructions, upon direction from The Home Depot.

43.     During the time of the defective installation of Mr. Varnes' windows and sliding-glass door, Mr. Varnes remained in constant contact with Defendants, and despite his efforts to seek repair of the defective installation, Plaintiff's windows and sliding glass door continued to leak and cause damage to his home and personal property.

44.     Due to the above-described circumstances, Mr. Varnes has never signed a certificate of completion, which is required before payment for the products and accompanying installation services is due.

45.     To date, Defendants have not compensated Mr. Varnes for the damage to his flooring and walls, or the related out-of-pocket expenses that he incurred, which resulted from Defendants' defective installation of the windows.

## PLAINTIFF BETTY SPENCER'S INDIVIDUAL ALLEGATIONS

46.     In July 2012, Plaintiff Betty Spencer purchased several Simonton windows, a Simonton sliding-glass door, and accompanying installation services, from Defendants for her home in Casselberry, Florida.   After visiting The Home Depot retail store, a representative of The Home Depot visited Ms. Spencer's home for a pre-installation inspection.

47.     Following assurances from The Home Depot that the installation would be performed properly, in compliance with all applicable laws and regulations, and manufacturer instructions, Ms. Spencer signed the Contract for the installation of several Simonton windows and a Simonton sliding-glass door.  The Home Depot's above-described marketing campaign, including representations that she would receive a complete and proper installation "from start to finish," formed a significant basis for Ms. Spencer's decision to purchase these products and services from Defendants.

48.     The building permit for Ms. Spencer's installation, which was pulled by a Home Depot employee, lists The Home Depot At Home Services as the contractor and subcontractor. It does not list Defendants' authorized service provider who installed the windows in Ms. Spencer's home.   The permit indicated that a final building inspection, meaning a closed inspection, was required.

49.     An independent inspection of Ms. Spencer's windows revealed the installation was not in compliance with the Florida Building Code and the manufacturer's instructions, including, but not limited to, a failure to use adequate window bucks and anchorage systems, and overall poor workmanship of the installation.   This inspection revealed that the defective installation could lead to various degrees of moisture and water intrusion, which can cause extensive damage within the wall assembly and surrounding structure, and could void the manufacturer's warranty.

50.     To date, the defective installation of Ms. Spencer's windows has not been repaired or cured.

**<u>PLAINTIFF JOSEPH WILLIAMS' INDIVIDUAL ALLEGATIONS</u>**

51.     In May 2012, Plaintiff Joseph Williams purchased several Simonton windows

and accompanying installation services from Defendants, to be installed in his home in Casselberry, Florida.  After visiting The Home Depot retail store, a representative of The Home Depot visited Mr. Williams' home for a pre-installation inspection.

52.    Following assurances from The Home Depot that the installation would be performed properly, in compliance with all applicable laws and regulations, and manufacturer instructions, Mr. Williams signed the Contract for the installation of several Simonton windows.  The Home Depot's above-described marketing campaign, including representations that he would receive a complete and proper installation "from start to finish," formed a significant basis for Mr. Williams' decision to purchase these products and services from Defendants.

53.    The building permit for Mr. Williams' installation, which was pulled by a Home Depot employee, lists The Home Depot At Home Services as the contractor and subcontractor.  It does not list Defendants' authorized service provider who installed the windows in Mr. Williams' home.  The permit indicated that a final building inspection, meaning a closed inspection, was required.

54.    An independent inspection of Mr. Williams' windows revealed the installation was not in compliance with the Florida Building Code and the manufacturer's instructions, including, but not limited to, the failure to use adequate window bucks and anchorage systems, and overall poor workmanship of the installation.  This inspection revealed that the defective installation could lead to various degrees of moisture and water intrusion, which can cause extensive damage within the wall assembly and surrounding structure, and voiding of the manufacturer's warranty.

55.    To date, the defective installation of Mr. Williams' windows has not been

repaired or cured.

### PLAINTIFF JASON NIMEY'S INDIVIDUAL ALLEGATIONS

56.     On June 21, 2013, Plaintiff Jason Nimey purchased several Simonton windows and accompanying installation services from Defendants.  After visiting The Home Depot retail store, a representative of The Home Depot visited Mr. Nimey's home for a pre-installation inspection.

57.     Following assurances from The Home Depot that the installation would be performed properly, in compliance with all applicable laws and regulations, and manufacturer instructions, Mr. Nimey signed the Contract for the installation of several Simonton windows. The Home Depot's above-described marketing campaign, including representations that he would receive a complete and proper installation "from start to finish," formed a significant basis for Mr. Nimey's decision to purchase these products and services from Defendants.

58.     The building permit for Mr. Nimey's installation, which was pulled by a Home Depot employee, lists The Home Depot At Home Services as the contractor and subcontractor. It does not list Defendants' authorized service provider who installed the windows in Mr. Nimey's home.  The permit indicates that a final building inspection, meaning a closed inspection, was required.

59.     On or around August 3, 2013, a few days after Mr. Nimey's window installation, and following a small rainstorm, Mr. Nimey noticed water leaking into his house through the windows installed by Defendants.  Mr. Nimey immediately called a Home Depot representative to report the leak, to no avail.  Approximately one week later, following another rainstorm, Mr. Nimey again noticed water coming in through the windows installed by Defendants, which leaked onto his new wood floors and caused the floors to bow, destroyed

the new wood trim on the floors, and required Mr. Nimey to replace the plasterboard around his windows due to mold growth resulting from the water leak.   Mr. Nimey immediately called a Home Depot representative to report the leak and related damage, again to no avail.

60.    Mr. Nimey obtained an independent inspection, which readily revealed that the window installation was not in compliance with the Florida Building Code or the manufacturer's instructions, including, but not limited to, the failure to use adequate window bucks and anchorage systems, and overall poor workmanship of the installation.   This inspection revealed that the defective installation could lead – and has led - to various degrees of moisture and water intrusion, which could cause further extensive damage within the wall assembly and surrounding structure, and voiding of the manufacturer's warranty.

61.    To date, the defective installation of Mr. Nimey's windows has not been repaired or cured, and Defendants have not compensated Mr. Nimey for the resulting damage to his wood floors, wood trim, plasterboard, and related out-of-pocket costs, resulting from Defendants' defective window installation.

## CLASS REPRESENTATION ALLEGATIONS

62.    This is a class action brought pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.   Plaintiff brings this action individually and on behalf of a "Class" or "Class Members," defined as:

> All Florida property owners whose windows or sliding-glass doors were installed by Defendants from April 2008 to the present.

> Excluded from the Class are Defendants.   Also excluded are any members of the judiciary to whom this case is assigned, their Court staffs and Plaintiffs' counsel.

> (hereinafter, "the Class" or "Class Members").

## Numerosity

63.     Members of the Class are so numerous and geographically dispersed throughout Florida that joinder of all members is impracticable.

64.     While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands of putative Class Members.

65.     The identities and addresses of Class Members can be readily ascertained from Defendants' records.

## Predominance of Common Questions of Law and Fact

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendants' failure to comply with the Florida Building Code as described herein constitutes an unfair trade practice in violation of Fla. Stat. §501.201, *et seq.,* other statutes, or common law or equitable principles;

b.     Whether Defendants' failure to comply with explicit instructions provided by the window and sliding-glass door manufacturer, as described herein, constitutes an unfair trade practice in violation of Fla. Stat. §501.201 *et seq.,* other statutes, or common law or equitable principles;

c.     Whether Defendants failed to comply with the Florida Building Code;

d.     Whether Defendants failed to install the subject windows and sliding-glass doors in compliance with the manufacturers' instructions;

e.     Whether Defendants breached the Contracts entered with Plaintiffs and the Class;

f.  Whether Defendants breached the Express Warranties with Plaintiffs and the Class;

g.  Whether Defendants conduct as described herein constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act;

h.  Whether Plaintiffs and Class Members are entitled to actual damages, disgorgement of profits, injunctive relief or other equitable relief against Defendants; and

i.  The proper measure of damages sustained by Plaintiffs and Class Members.

### Typicality

67.  The claims of Plaintiffs are typical of the claims of Class Members, in that Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and conduct by Defendants affecting Class Members, and Plaintiffs have no interests adverse to other Class members.

### Adequacy

68.  Plaintiffs will fairly and adequately protect the interests of Class Members and are committed to the vigorous prosecution of this action.   Plaintiffs have retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in this type of consumer protection litigation.

### Superiority

69.  A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class.

b.   Absent a Class, the Class Members will continue to suffer damage to their real and personal property and Defendants' unlawful conduct will continue without remedy while Defendants profits from and enjoys its ill-gotten gain;

c.   Given the size of the individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendants have been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court;

e.   This action presents no difficulty that would impede its management by the Court as a class action which is the best available means by which Plaintiffs and Members of the Class can seek redress for the harm caused to them by Defendants.

70.   Defendants have utilized uniform procedures relating to the improper installation of windows and sliding-glass doors in violation of applicable construction standards, the Florida Building Code and explicit manufacturer instructions.  Moreover, Defendants' uniform conduct has resulted in damage to Plaintiffs and the Class.  As a consequence, Defendants have acted on

grounds generally applicable to each Class Member herein, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

71.     Defendants' failure to comply with applicable construction standards, the Florida Building Code and explicit manufacturer instructions arises out of a common omission or failure to act, which has a uniform effect on Plaintiffs and all Members of the Class.  Plaintiffs seek preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendants to discontinue their unlawful conduct.

72.     Because Plaintiffs seeks injunctive relief and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Members of the Class, which would establish incompatible standards of conduct for Defendants. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute at the center of this litigation.  Adjudications with respect to individual Members of the Class would, as a practical matter, be dispositive of the interest of other Members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests.  As a consequence, class treatment is a superior method for adjudication of the issues in this case.

**FIRST CAUSE OF ACTION**
**(Violation of Florida Deceptive and Unfair Trade Practices Act)**

73.     Plaintiffs repeat and realleges the allegations contained in paragraphs 1 - 72 above as if fully set forth herein.

74.     Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq.* ("FDUPTA") protects consumers from "unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

75. Plaintiffs and Class Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

76. Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq*. Defendants' deceptive representations, omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

77. Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade and commerce by, *inter alia*, their comprehensive deceptive marketing campaign described above, which was reasonably likely to deceive the public.

78. Defendants' marketing campaign, included the following uniform deceptive representations to consumers, including Plaintiff and Class Members:

a. "Total 'end-to-end' project management from measurement to installation to cleanup," *See attached* Exhibit A;

b. "Sit Back & Watch Us Work...Our team will provide start to finish project management from all phases of your windows installation, from delivery to cleanup," *See attached* Exhibit A;

c. "The Home Depot will ensure that your windows are installed professionally to give you peace of mind for years to come," *See attached* Exhibit A;

d. "Labor and product backed by The Home Depot, the nation's #1 home improvement retailer," *See attached* Exhibit A;

e. "When you hire us for your project, you'll know we will get the job done right," *See attached* Exhibit B; and

f. "When you work with The Home Depot, you won't have to go to the trouble of finding multiple installers and home service professionals for different parts of your project. From your initial consultation all the way through the installation and cleanup, we'll make sure the project is done right;" *See attached* Exhibit B.

g. "INSTALLATION YOU CAN TRUST. We know you have a choice when it comes to hoe improvement projects. That's why at The Home Depot, we are committed to providing quality installation services by offering a complete solution - from start to finish." *See attached* Exhibit C.

h. "PROFESSIONAL INSTALLATION. Expect licensed and insured professionals who will make sure you receive a complete and proper installation." *See attached* Exhibit C.

i. "The Best Warranties, backed by the largest home improvement retailer in the World!" *See attached* Exhibit D.

79. Through this extensive marketing campaign, Defendants have conveyed one uniform deceptive message - consumers who purchase windows, sliding-glass doors, and installation services for same, can have "peace of mind" that the project will be "done right," with quality products and installation services, so the consumer can just "[s]it [b]ack and [w]atch [Defendants] work," while The Home Depot provides "start-to-finish project management from

all phases of your window installation, from delivery to clean up...[and] ensure[s] that your windows are installed professionally to give you peace of mind for years to come."

80.   Defendants' marketing campaign is designed to cause consumers to purchase products and installation services as a result of this deceptive message.  However, Defendants did not provide the installation services as marketed.  Instead, Defendants cut corners and failed to ensure that the installation of windows and sliding-glass doors would be "done right" from "start to finish," through their multiple violations of applicable construction standards, the Florida Building Code, and explicit manufacturer instructions.

81.   Defendants further violated the FDUTPA by failing to install windows and sliding glass doors in compliance with the Florida Building Code and manufacturer installation instructions, thus subjecting Plaintiffs and Class Members to sustain damages to their real and personal property.  Defendants' violations are unconscionable and were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff's and Class Members, who reasonably believed that the windows and sliding-glass doors would be installed properly.

82.   Defendants' violated FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

83.   Plaintiffs and the Class reserve the right to allege other violations of FDUPTA as Defendants' conduct is ongoing.

84.   As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiffs and the Class members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.  Plaintiffs and the Class also seek equitable relief and to enjoin

Defendants on the terms that the Court considers reasonable.  In addition, Plaintiffs and the Class seek reasonable attorneys' fees and costs incurred in bringing this action.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

85.     Plaintiffs repeat and realleges the allegations contained in paragraphs 1 - 72 above as if fully set forth herein.

86.     Plaintiffs and each Class Member formed a contract with Defendants for the purchase and installation of windows and sliding-glass doors from Defendants.

87.     Under Florida law, a covenant of good faith and fair dealing is implied in every contract, including the Contract between Plaintiffs and Class Members and Defendants, for the purchase and sale of windows and sliding-glass doors and installation services for same.

88.     Pursuant to the terms of the Contract, attached hereto as Exhibit "D," Defendants were obligated to arrange for the installation of windows and sliding glass doors in a professional and workmanlike manner, and to ensure the windows and sliding-glass doors were installed in compliance with applicable laws and regulations, and manufacturer instructions.

89.     Defendants breached the aforementioned Contract and the implied covenant of good faith and fair dealing when they failed to arrange for the installation of windows and sliding-glass doors in a professional and workmanlike manner, and when they failed to ensure that Plaintiffs' and Class Members' windows and sliding-glass doors were installed in compliance with applicable construction standards, the Florida Building Code and explicit manufacturer instructions.

90.     The Home Depot acts as the general contractor to authorized service providers that it retains to perform the subject installations and, in doing so, acknowledges that it may be subject to lost sales, fines, and lawsuits if it fails to effectively manage the installation service

business.  Despite this acknowledgement, Defendants fail to ensure the installation of windows and sliding-glass doors in a professional and workmanlike manner.

91.     As described above, in counties that require inspections after the installation is complete and inspectors are unable to assess the hidden code and construction violations alleged herein, The Home Depot instructs its authorized service providers to install windows and sliding-glass doors in violation of the Florida Building Code, applicable construction standards and explicit manufacturer instructions.  In addition, The Home Depot fails to provide its authorized service providers with the materials required to install windows and sliding-glass doors in compliance with these requirements.  Clearly, The Home Depot never had any intention to arrange for installation of windows and sliding-glass doors in a professional and workmanlike manner.

92.     The Home Depot's failure to ensure the proper installation of windows and sliding glass doors, including its instructions to authorized service providers to perform these installations in violation of the Florida Building Code and explicit manufacturer instructions, is a direct breach of The Home Depot's contractual obligation to arrange for the installation in a professional and workmanlike manner.

93.     The Home Depot's failure to ensure the proper installation of windows and sliding glass doors is a direct breach of The Home Depot's obligation to provide the products and services promised in the Contract, including windows and sliding glass-doors that function as intended.

94.     As a result of Defendants' breach of the Contract, Plaintiffs and Class Members have suffered damage to their real and personal property and have paid for products and services that have not delivered and performed as promised.

95.     Plaintiffs have performed all of their obligations under the Contract.

96.     All conditions precedent to this cause of action have been performed.

97.     As a direct and proximate result of Defendants' breach of the Contract, Plaintiffs and the Class have been damaged and are entitled to declaratory or injunctive relief declaring that Defendants have breached their Contracts, providing that Defendants be enjoined from continuing to breach the Contracts now or in the future, and providing for the reformation of the Contracts, together with such other and further relief as this Court may deem just and proper.

### THIRD CAUSE OF ACTION
### Breach of Express Warranty

98.     Plaintiffs repeat and realleges each allegation contained in Paragraphs 1 through 72, as if fully set forth herein.

99.     As part of Plaintiffs' and Class Members' purchase of windows and sliding-glass doors and installation services for same, Defendants guaranteed to Plaintiff and Class Members certain express warranties as enumerated in the "Lifetime Craftsmanship Warranty," attached hereto as Exhibit "G."  Pursuant to this Express Warranty, Defendants warranted the workmanship of the installation, including that the windows and sliding-glass doors would be installed in compliance with applicable construction standards, the Florida Building Code, and explicit instructions from the manufacturers.  This warranty is provided by The Home Depot to consumers, including Plaintiffs and the Class, when they purchase installation services from Defendants, at the same time they are provided the Contract.

100.     As part of this Express Warranty, attached hereto as Exhibit "E," The Home Depot warrants that the installation will be "done right for as long as the consumer owns his or her home," in addition to the following:

a. "TOTAL PROJECT MANAGEMENT On time, courteous, respectful professionals dedicated to managing your project from beginning to end;"

b. "GUARANTEED All installations are guaranteed ++ The Home Depot will stand behind the service you receive;" and

c. "PROFESSIONAL INSTALLATION YOU CAN TRUST. We know you have a choice when it comes to home improvement projects. That's why at The Home Depot, we are committed to providing quality products an installation services by offering a complete solution - from start to finish. It's our promise. Now, that's peace of mind."

101. This warranty, which was given to Plaintiffs by The Home Depot at the time Plaintiffs purchased their windows and sliding-glass doors, and installation services for same, provided a significant basis for Plaintiffs decisions to purchase the subject windows and sliding-glass doors.

102. Defendants breached the Express Warranty when they failed to ensure the installation was "done right," including through their failure to install Plaintiffs' and Class Members' windows and sliding-glass doors in compliance with applicable construction standards, the Florida Building Code, and explicit manufacturer instructions.

103. Plaintiffs performed all of their obligations under the Contract.

104. All conditions precedent to this cause of action have been performed.

105. As a direct and proximate result of the breach of warranty, Plaintiffs and the Class have suffered and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members, pray for judgment against Defendants as follows:

A.      Certification of this case as a class action;

B.      Appointment of Plaintiffs as representatives of the Class.

C.      Appointment of the undersigned as Class Counsel.

D.      Holding Defendants liable to Plaintiffs and Class Members for actual damages in such amount as the Court or Jury may determine;

E.      Enjoining Defendants from continuing to violate the Florida Building Code;

F.      Enjoining Defendants from continuing to install windows and sliding-glass doors in violation of manufacturer installation instructions;

G.      Requiring Defendants to install windows and sliding-glass doors in compliance with the Florida Building Code;

H.      Requiring Defendants to install windows and sliding-glass doors in compliance with manufacturer installation instructions;

G.      Awarding Plaintiffs and Class Members attorneys' fees and all litigation costs;

H.      Awarding Plaintiffs and Class Members such other equitable and legal relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, on their own behalf and on behalf of all others similarly situated, hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

BY:    /s/John Yanchunis
         John Yanchunis, Esquire
         FBN: 0324681
         jyanchunis@forthepeople.com
         Rachel L. Soffin, Esquire
         FBN: 0018054
         MORGAN & MORGAN, P.A.
         695 Central Ave, Suite 150 J

St. Petersburg, FL 33701
(813) 223-5505 Telephone
(813) 223-5402  Facsimile