UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID A. VARNES, et al.,

    Plaintiffs,

v.                                       Case No. 3:12-cv-622-J-39JBT

HOME DEPOT USA, INC. and THD AT-
HOME SERVICES, INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Class Certification [Doc. 100] filed November 14, 2014. Defendants responded in opposition on December 4, 2014. (Doc. 105). Accordingly, the matter is ripe for review.

### I.    BACKGROUND

The case arises from the original single named Plaintiff, David Varnes ("Plaintiff or Mr. Varnes"), who initially filed this class action in the Seventh Judicial Circuit, in and for Flagler County, Florida. (Doc. 1). Defendants promptly removed the case to this Court on May 25, 2012. Id. Subsequent to removal, Mr. Varnes's Complaint (Doc. 3) was eventually dismissed by the Court for numerous reasons, including failure to state a claim for which relief could be granted, filing of duplicative counts, and failure to give notice to Defendants.[1] (Doc. 32; 11/15/2012 Order).

---

[1] This ground for dismissal was predicated on Fla. Stat. § 558.004(1). The Court held that Mr. Varnes was required to give Defendants notice of the allegations of violation of the Florida Building Code and an opportunity to inspect the property in question in

In dismissing Mr. Varnes' Complaint, the Court granted him leave to file an amended complaint remedying the noted deficiencies. Mr. Varnes filed his Amended Complaint (Doc. 33) on December 7, 2012, which fared no better than his first. The Court found that it "[could] not determine whether Plaintiff ha[d] a viable claim or the contours of such a claim," and dismissed Mr. Varnes' Amended Complaint "with leave to amend, so that Plaintiff [could] restate his claims if he [was] so inclined, taking into account the discovery to date." (Doc. 70 at 4; 9/30/2013 Order).[2] Mr. Varnes' Second Amended Class Action Complaint (Doc. 73; Second Amended Complaint) followed on November 4, 2013.[3]

In the Second Amended Complaint, Betty Spencer, Joseph Williams, and Jason Nimey joined Mr. Varnes (collectively, "Plaintiffs") in seeking appointment as named class representatives. The Court allowed Ms. Spencer, Mr. Williams, and Mr. Nimey to join as class plaintiffs, but only allowed the Plaintiffs' claim pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, to be considered for class certification.

The gravamen of the class action FDUPTA claim revolves around Defendants' alleged deceptive advertising of professional installation services. Plaintiffs allege Defendants "lure[d]" customers into purchasing installation services from them by

---

accordance with the Statute before a claim for a violation of the Florida Building Code could be maintained.

[2] The Court also denied a Motion for Intervention, filed by Mr. Varnes' attorney on behalf of Joseph Williams, Betty Spencer, and Patricia Williams. (Doc. 54).

[3] The Court said it would "issue an order rescheduling other deadlines after receipt and review of Plaintiff's second amended complaint and Defendants' responsive filing." (Doc. 70 at 5-6).

making representations such as "Labor and product backed by the The Home Depot, the nation's #1 home improvement retailer" and "When you hire us for your project, you'll know we will get the job done right." (Doc. 73 ¶ 18). Despite Defendants' representations, Plaintiffs allege that Defendants cut corners in their installation services by failing to comply with manufacture instructions and the Florida Building Code. (Id. at ¶ 4).[4]

Specifically, Plaintiffs' theory is that Defendants failed to install or have installed adequate bucks[5] in masonry openings in Florida counties that conducted only closed inspections. (Doc. 100 at 3). The closed inspections occurred in "closed" counties and made it impossible for inspectors "to assess the hidden code and construction violations alleged herein." (Doc. 100 at 5).[6] By contrast, where an installation occurred in an "open" county, or a county requiring open inspections, an inspector was able to observe whether Defendants properly installed bucks and fasteners around the window or door. (Doc. 101, Ex. C at 5). In these open counties, Defendants instructed its subcontractors to follow the Florida Building Code and manufacture instructions, including ensuring the existence of adequate bucks. (Doc. 100 at 6).

---

[4] The Home Depot acts as a general contractor for the installation of various products, including sliding glass doors and windows, and engages subcontractors to complete the work. (Id. ¶ 24).

[5] "A 'buck' is a structural framing member that is used as a plane of attachment and support for a window or [sliding glass door]." (Doc. 101, Ex. C at 6).

[6] Indeed, Plaintiffs allege that because the inspections occur after the installation service is complete that Defendants face "little to no risk of getting caught for violations of the Florida Building Code" so Defendant instructs its providers to install windows and sliding glass doors "with existing conditions, regardless of whether the opening includes an adequate buck." (Id. at 6).

The named Plaintiffs and the class they seek to represent are Florida property owners who "purchased windows and sliding-glass doors, and accompanying installation services, from Defendants, from April 2008 to present, where the installation occurred in counties and municipalities with closed inspections."[7] (Doc. 100 at 9). As a result of Defendants' actions, Plaintiffs claim to have suffered, among other things, reduced energy efficiency, water intrusion, and reduced structural integrity. (Id. at 7). Plaintiffs now seek certification of the proposed class.

## II.   ANALYSIS

The party "seeking to maintain a class action must affirmatively demonstrate [] compliance with Rule 23.[8]" Comcast Corp. v. Behrand, 133 S.Ct. 1226, 1432 (2013) (quotations and citations omitted). Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are routinely referenced as "numerosity, commonality, typicality, and adequacy of representation." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003). "Failure to establish any one of these four factors . . . precludes class certification." Id.

---

[7] "Excluded from the Class are Defendants. Also excluded are any members of the judiciary to whom this case is assigned, their Court staffs and Plaintiffs' counsel." (Doc. 100 at 9).

[8] Rule 23, Federal Rule(s) of Civil Procedure ("Rule(s)").

Once the party seeking class certification meets all of Rule 23(a)'s requirements, the party must then satisfy one of Rule 23(b)'s requirements. Id. Finally, the party must meet a threshold requirement not mentioned, but implicit in the Rule 23 analysis: that is, the plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (quoting Little v. T–Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Bussey, 562 F. App'x at 787 (quotation omitted). The analysis of the objective criteria also should be administratively feasible. Id. "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." Id. (quotation omitted). Indeed, before proceeding to Rule 23(a), the Court must ensure the proposed class is adequately defined. See Walewski v. ZeniMax Media, Inc., No. 6:11-CV-1178-ORL-28, 2012 WL 834125, at *4 (M.D. Fla. Jan. 30, 2012) report and recommendation adopted, No. 6:11-CV-1178-ORL-28, 2012 WL 847236 (M.D. Fla. Mar. 13, 2012) aff'd, 502 F. App'x 857 (11th Cir. 2012) ("Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered.") (quotation omitted); John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.") (citing DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).[9]

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted all decisions of the former Fifth Circuit issued before October 1, 1981 as binding precedent

Plaintiffs have had several opportunities to refine their proposed class definition. (See e.g., Doc. 73; Second Amended Complaint). In the Second Amended Complaint, Plaintiffs defined the class as "[a]ll Florida property owners whose windows or sliding-glass doors were installed by Defendants from April 2008 to the present.") (Doc. 73 ¶ 62). Presumably realizing the overbreadth of this definition, Plaintiffs refined the class definition in their Motion to Certify Class to only apply to purchasers that live in "counties and municipalities with closed inspections." (Doc. 100 at 9). Yet, even Plaintiffs' refined definition is overbroad and fails to render the putative class clearly ascertainable.

First, the Court notes the overbreadth of Plaintiff's proposed class. For example, in their Motion, Plaintiffs specifically refer to Defendants' conduct in failing to ensure the proper placement of "structural buck[s] in masonry openings." (Doc. 100 at 3) (emphasis added); (Doc. 101, Ex. C at 3). Defendants' proposed class is problematic because it is not limited to the installation of windows and doors into masonry openings. Rather, it includes other types of openings, like those installed in wood-frame window openings.[10] See Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad . . . .").[11]

---

[10] "In wood framed construction, the framed opening for the window normally acts as the buck for the window or [sliding glass door], and as such does not require an additional framing member to be installed." (Doc. 101, Ex. C at 6).

[11] Moreover, the Court declines to redefine the class definition in attempt to remedy its facial inadequacies. Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 300 (S.D. Ala. 2006) ("Having selected and litigated the class definition of their choice, plaintiffs must live with that choice.").While there is authority for the idea that a district court may amend class definitions without direction from an appellate court, Jackson v. Nat'l Action Fin. Servs., Inc., 227 F.R.D. 284, 286 (N.D. Ill. 2005) ("[T]he Court may modify the definition of a proposed class if such modification will remedy an inadequacy in the plaintiff's definition."), there is no authority requiring a district court to modify an inadequate class definition at this stage of the proceedings.

Even limiting the class definition only to include those customers in closed counties with products installed in masonry openings is insufficient, however, as many of these customers may have had adequate preexisting bucks. If an adequate preexisting buck was already present, then Defendants had no need to install a new buck, and the putative plaintiff would have suffered no damages and therefore not have a viable FDUPTA claim. Consequently, including these putative plaintiffs is fatal to class certification. See Walewski v. Zenimax Media, Inc., 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of a motion to certify class where proposed class definition "impermissibly include[d] members who ha[d] no cause of action as a matter of law."); Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification because the proposed class included "putative class [members that] could not show any damage, let alone damage proximately caused by [the defendant]'s alleged deception.").

Which brings the Court to the third flaw of Plaintiffs' proposed class: to determine whether installations were completed consistent with manufacturer specifications and the Florida Building Code, Plaintiffs would have to rely on one of their experts to measure the window or door units, remove side jamb screws, and probe the interior of the windows. (See Doc. 101, Ex. C). This procedure, at least to some extent, would need to be repeated on each and every putative class member's window(s) and door(s) to determine whether Defendants properly installed the products. (Doc. 101, Ex. C at 16-17). This inquiry is crucial as Plaintiffs describe "[t]he main issue in dispute is whether the subject installations were performed in violation of the Florida Building Code and manufacturer installation instructions." (Doc. 100 at 16). Yet, the

individualized subjective tests needed to determine whether a potential plaintiff may have a cause of action, and therefore be properly joined to the putative class, is exactly what the Eleventh Circuit intended to prohibit. Bussey, 562 F. App'x at 787 (reversing district court's certification of a class after finding that identifying class members would require too much individual inquiry).

Accordingly, after due consideration, it is

**ORDERED:**

1. Plaintiffs' Motion for Class Certification (Doc. 100) is **DENIED**.

2. The Clerk of the Court shall administratively close this case and terminate all pending motions until further order of this Court.

3. The parties shall confer and file a joint notice, including an appropriate memorandum of law, as to whether this Court has continued jurisdiction over this case in light of its ruling on Plaintiffs' Motion for Class Certification on or before **September 30, 2015**.[12]

---

[12] Specifically, the Court is concerned about the amount in controversy requirement being met in light of the elimination of the class action dimension of this case. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001) ("Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000.") (citing 28 U.S.C. § 1331(a)); see also Vail v. Smarterfuel S., LLC, No. CIV.A. 13-00277-KD, 2013 WL 5373525, at *6 (S.D. Ala. Sept. 25, 2013) (holding that outside of the class action context, "generally, to satisfy the amount-in-controversy requirement at least one plaintiffs [sic] claim must independently meet the amount-in-controversy specification.").

    a.    If the parties agree that this Court no longer has jurisdiction over this case, they shall file a joint motion to remand this case to state court along with their joint notice.

    b.    If the parties agree that this Court continues to have jurisdiction over this case, they shall include with their joint notice a proposed mediation date.

    c.    If the parties disagree over whether this Court continues to have jurisdiction over this matter, they shall each explain their respective positions in their joint notice, and support their positions with appropriate memoranda of law.

**DONE** and **ORDERED** in Jacksonville, Florida this 4th day of September, 2015.

_____
BRIAN J. DAVIS
United States District Judge

/p

mw
Copies furnished to:

Counsel of Record